Edward A. **ANDERSON**, Plaintiff,

v.

**CHICAGO CENTRAL AND PACIFIC
RAILROAD COMPANY, etc., et al.,
Defendants/Third Party Plaintiffs,**

v.

Calvin **COOK** et al., Third–
Party Defendants.

No. 89 C 20161.

United States District Court,
N.D. Illinois, W.D.

Jan. 14, 1991.

Robert Steven Wilson, Sycamore, Ill., for plaintiff.

Donald Manning, Clark, McGreevy & Johnson, Rockford, Ill., Edward J. Krug, Lynch, Dallas, Smith & Harman, Cedar Rapids, Iowa, for defendants/third party plaintiffs.

## ORDER

ROSZKOWSKI, District Judge.

Before the court is Plaintiff's motion to dismiss the tenth affirmative defense of Defendants Chicago Central and Charles J. Freeland. For the reasons which follow, the court grants Plaintiff's motion. Further, the court grants Defendants leave to amend their tenth affirmative defense within twenty-one days, in accordance with this Order.

## BACKGROUND

On May 5, 1989, Plaintiff, Edward A. Anderson, filed a complaint in this court against Chicago Central and Pacific Railroad Co. (hereinafter Chicago Central), a Delaware corporation, and Charles J. Freeland. Because the parties are of diverse citizenship, this court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. On August 9, 1989, Defendants filed a third party complaint against Calvin Cook and Charles Strook. On July 2, 1990 Plaintiff filed a motion to dismiss Defendants' tenth affirmative defense, and that motion is the subject of this Order.

Plaintiff's complaint alleges that he was injured when the truck he was operating was struck by a train owned by Chicago Central. Plaintiff asserts that the crossbuck warning, the sole warning device other than standard traffic warning signs at the site of the collision, was an inadequate warning. Plaintiff argues that Defendant Chicago Central was negligent in failing to place adequate warning devices at the railroad crossing where the collision occurred, on Myelle Road in DeKalb County, Illinois. The gist of Plaintiff's motion to dismiss is that federal railway law does not free Chicago Central from its common law duty to provide a good and safe crossing.

Defendants' tenth affirmative defense states:

Plaintiff's claims, insofar as they seek recovery based on the defendants' alleged failure to provide additional signals or warning devices at the grade crossing in question, are preempted by federal law pursuant to the Rail Safety Act of 1970 (45 U.S.C. Section 434) and the Highway Safety Act of 1973 (23 U.S.C. Section 130 *et seq.*), as amended, and the regulations issued by the Secretary of Transportation pursuant thereto,, [sic] which vested all legal duties related to such claims in the public authorities of the State of Illinois, which was required to, and did accept and undertake such duties so as to remain qualified for its continued receipt of federal highway funding.

Defendants' amended answer, filed June 20, 1990.

## DISCUSSION

In analyzing a motion to dismiss, this court will not dismiss a complaint unless it is clear there are no set of facts that Plaintiffs could prove consistent with the pleadings that would entitle them to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Murphy v. Lane,* 833 F.2d 106, 107 (7th Cir.1987); *Vaden v. Village of Maywood,* 809 F.2d 361, 363 (7th Cir.), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). The court will accept all well-pleaded factual allegations in the complaint as true. *Vaden,* 809 F.2d at 363; *Doe v. St. Joseph's Hosp. of Fort Wayne,* 788 F.2d 411, 414 (7th Cir.1986). In addition, this court will view the allegations in a light most favorable to the non-moving party. *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); *Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir.1984).

Defendants argue that the doctrine of federal preemption applies here, so that a claim of common law negligence cannot stand against them. Federal law preempts state law if the two are in actual conflict; in other words, if it is impossible to comply with both state and federal law, or where the state law impedes the achievement of the objectives of the federal law. *Consolidated Rail Corp. v. Smith,* 664 F.Supp. 1228, 1236 (N.D.Ind.1987), citing *California Coastal Comm'n v. Granite Rock Co.,* 480 U.S. 572, 580–81, 107 S.Ct. 1419, 1424–25, 94 L.Ed.2d 577 (1987); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Hines v. Davidowitz,* 312 U.S. 52, 68, 61 S.Ct. 399, 404–05, 85 L.Ed. 581 (1941). Courts have interpreted that Congress intended that the Federal Railroad Safety Act, 45 U.S.C. §§ 421–445 (1988) (hereinafter FRSA) have total preemptive effect over state law. *Consolidated Rail,* 664 F.Supp. at 1236. However, the FRSA authorizes two specific exceptions to its preemptive effect. It allows states to adopt railway safety rules or continue such rules in force 1) until the Secretary of Transportation enacts a rules covering the same subject matter, or 2) when necessary to reduce a local safety hazard, so long as the state law is compatible with federal law and interstate commerce. 45 U.S.C. § 434 (1988).

The FRSA requires the Secretary of Transportation to study and develop solutions to problems related to railroad grade crossings. *Id.* at § 433. The Secretary adopted the Manual on Uniform Traffic Control Devices on Streets and Highways. 23 C.F.R. § 655.601. The Manual requires that the local agency with jurisdiction over a given rail crossing is to select devices for grade crossings. *Id.* Illinois law has authorized the Illinois Commerce Commission (ICC) to require the installation of warning devices at rail crossings. The relevant provision of the Illinois Commercial Transportation Law provides:

The Commission shall have power, upon its own motion, or upon complaint, and after having made proper investigation, to require the installation of adequate and appropriate luminous reflective warning signs, luminous flashing signals, crossing gates illuminated at night or

other protective devices in order to promote and safeguard the health and safety of the public. Luminous flashing signal or crossing gate devices installed at grade crossings, which have been approved by the Commission, shall be deemed adequate and appropriate. The Commission shall have authority to determine the number, type and location of such signs, signals, gates or other protective devices which, however, shall conform as near as may be with generally recognized national standards....

Ill.Rev.Stat. ch. 95½, para. 18c–7401 (1989).

Once the ICC has investigated and ordered the installation of a particular kind of warning device, its decision is conclusive, and the railroad is precluded from installing any other signal. *Hunter v. Chicago & N.W. Transp. Co.*, 200 Ill.App.3d 458, 146 Ill.Dec. 253, 558 N.E.2d 216 (1990), citing Transcript of Debate 114–23, Ill. House Rep., 82nd G.A. (Apr. 22, 1982) [hereinafter House Debate].

Defendants have not presented evidence that the ICC has made any determination under the Manual, or under the statutory provision quoted above, of the type of warning device to be installed at the crossing on Myelle Road where the collision at issue occurred. The Ninth Circuit has held that until a federal decision is reached, through the local agency with jurisdiction, on the adequacy of the warning devices at a rail crossing, the railroad's common law duty of due care is not preempted. *Marshall v. Burlington N., Inc.* 720 F.2d 1149, 1154 (9th Cir.1983). Under the *Marshall* rule, Defendant Chicago Central's duty of due care would be preempted only if the ICC has ruled that crossbucks and ordinary traffic warning signs are adequate and appropriate at the Myelle Road crossing.

The Eighth Circuit has ruled that a railroad may be held liable in common law negligence even where the local agency with jurisdiction *has approved* the warning devices at a rail crossing. *Karl v. Burlington N. R.R. Co.*, 880 F.2d 68, 76 (8th Cir.1989). Under *Karl*, Defendant Chicago Central would not be free from a common law negligence claim even if the ICC *had*

*approved* the crossbuck devices at the Myelle Road crossing.

In Illinois, a railroad has a common law duty to provide adequate warning devices at its rail crossings. *Bassett v. Burlington N. R.R. Co.*, 131 Ill.App.3d 807, 86 Ill.Dec. 855, 476 N.E.2d 31 (1985). The Seventh Circuit has held that whether a train's warning signals are adequate depends on the circumstances, and is a question for the jury. *Puckett v. Soo Line R.R. Co.*, 897 F.2d 1423, 1427 (7th Cir.1990). The *Puckett* court suggested, in dicta, that the same analysis should apply to the question of whether warning devices at rail crossings are adequate. *Id.* at 1427–28.

Under the standards of either the Eighth or Ninth Circuits, as noted above in *Karl* and *Marshall*, if the ICC had, at the time of the collision, made *no* determination of what warning devices were adequate and appropriate at the Myelle Road crossing, then a common law negligence claim against Defendants may stand. According to the legislative history of relevant Illinois law, if the ICC *had* made such a determination, then Chicago Central would be precluded from installing any warning devices other than those the ICC deemed appropriate. House Debate, at 114–23.

Defendants have not argued that the ICC made any determination as to the appropriate warning devices for the Myelle Road rail crossing. Absent any such argument, Defendants' affirmative defense of federal preemption is without merit; Plaintiff's claim of common law negligence against Defendants may stand. Therefore, the court grants Plaintiff's motion to dismiss Defendants' tenth affirmative defense. However, the court also grants Defendants leave to amend their tenth affirmative defense within twenty-one days, if Defendants can assert that the ICC had, by the time of Plaintiff's collision, made a determination as to the appropriate warning devices at the collision site.

## CONCLUSION

For the reasons stated in this Order, the court grants Plaintiff's motion to dismiss Defendants' tenth affirmative defense.

**230**

Further, the court grants Defendants leave to amend their tenth affirmative defense within twenty-one days, in accordance with this Order.